___



**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 12, 2020**

The Order of the Court is set forth below. The docket reflects the date entered.
___

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: PATRICIA E. GAUGHF** | **CASE NO. 19-50947-KMS** |
| **DEBTOR** | **CHAPTER 7** |
| **KIMBERLY R. LENTZ**<br>as Chapter 7 Trustee for the Bankruptcy Estate<br>of Patricia Gaughf, Debtor | **PLAINTIFF** |
| **V.** | **ADV. PROC. NO. 19-06031-KMS** |
| **PARKLAND LEGAL GROUP, PL;**<br>**MITCHELL S. ORTEGA; GLOBAL**<br>**CLIENT SOLUTIONS, LLC;**<br>**GLOBAL HOLDINGS, LLC** | **DEFENDANTS** |

### OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION

This matter came on for hearing on the Motion to Dismiss or, Alternatively, to Compel Arbitration and Stay or Dismiss the Case, ECF No. 17, by Defendants Global Client Solutions LLC ("Global") and Global Holdings LLC, with Response by Plaintiff and chapter 7 Trustee Kimberly R. Lentz, ECF No. 24. As to Global,[1] the Complaint pleads three counts within the bankruptcy court's core jurisdiction: Turnover of Estate Property under 11 U.S.C. § 542(e), Fraudulent Transfer under 11 U.S.C. § 548, and Accounting under 11 U.S.C. § 542(a). The

---

[1] Global Holdings LLC has been dismissed without prejudice. ECF No. 35.

Complaint also pleads one count within the bankruptcy court's non-core jurisdiction: aiding and abetting the other Defendants' alleged breach of fiduciary duty ("Aiding and Abetting Count").

The Motion seeks dismissal of the entire Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] In the alternative as to only the Aiding and Abetting Count, the Motion seeks an order compelling arbitration. As to the core counts, the Court ruled from the bench, in part granting and in part denying the Motion, ECF No. 35, but took under advisement the questions of dismissal or arbitration of the Aiding and Abetting Count. Concluding that the Aiding and Abetting Count must be referred to arbitration, the Court does not consider dismissal and instead stays that count pending the arbitrator's ruling.

## THE STANDARD UNDER RULE 12(b)(6)

When considering a motion under Rule 12(b)(6), the court accepts as true all well-pleaded facts and construes them in favor of the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The facts must be specific. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) ("[C]onclusory allegations and unwarranted deductions of fact are not admitted as true"). To defeat dismissal, the plaintiff must plead enough facts to state a claim that is "plausible on its face." *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court may consider only the pleadings and their attachments, except for documents attached to the motion to dismiss, which "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

---

[2] Rule 12(b)(6) applies in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7012(b).

## FACTS ACCEPTED AS TRUE

The events giving rise to this adversary proceeding occurred prepetition, when Debtor Patricia Gaughf found herself struggling under the burden of over $40,000 in unsecured debt. Compl. ¶¶ 10-11, ECF No. 1 at 3. Wanting to repay her creditors and looking to the Internet for options, Gaughf found Parkland Legal Group PL ("Parkland Legal"), a company that provides consumer debt settlement services.[3] *Id.* ¶¶ 6, 13. Gaughf talked to a sales representative for Parkland Legal and, after being led to believe that Parkland Legal's lawyers would be working to resolve her debts, enrolled her debts into the program. *Id.* ¶¶ 13-15.

Gaughf received a welcome packet, which stated that "[Parkland Legal's] negotiations team has years of experience and is fully staffed with aggressive, trained specialists who know the best way to approach your specific situation and how to obtain the most affordable settlements possible." *Id.* ¶ 17; Ex. A to Compl., ECF No. 1-1 at 2. Gaughf also received a retainer agreement, which a field agent reviewed with her. Compl. ¶¶ 17, 19. Having been led to believe the program could resolve her debts and enable her to avoid bankruptcy, Gaughf signed the agreement. *Id.* ¶¶ 19-20.

In addition to the agreement with Parkland Legal, Gaughf signed an agreement with Global. *See* Dedicated Account Agreement and Application ("DAAA"), Ex. A to Mot., ECF No. 18 at 2-5. Global partners with Parkland Legal and other providers of debt settlement programs, the purposes of which include improving consumers' credit scores. Compl. ¶ 6. Global's role and its principal business is to receive and hold funds collected from the consumer clients of debt settlement providers and to distribute the funds among creditors. *Id.* ¶ 36. The debt settlement

---

[3] Defendant Mitchell S. Ortega is Parkland's managing attorney and managing member. *Id.* ¶ 7.

3

programs could not operate without Global. *Id.* ¶ 8. Gaughf paid for Global's services through fees that Global deducted directly from Gaughf's account. ECF No. 18 at 2.

By signing the DAAA, Gaughf agreed to its arbitration provision ("Arbitration Agreement"), which in part provides that "any controversy between the parties . . . (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this [DAAA] or its performance, breach, termination, enforcement, interpretation or validity, including the determination of the validity, scope or applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration." *Id.* at 2, 3.

Although Gaughf was current on her credit card payments, Parkland Legal told her to stop paying her creditors and instead to make monthly payments into the program, which she did for approximately ten months, ultimately paying more than $5000. Compl. ¶¶ 16, 22, 24, 30. But notwithstanding these payments and Parkland Legal's "aggressive trained specialists," Gaughf felt after several months that she was doing all the work. *Id.* ¶ 26.

Eventually, she was sued by one of the credit card companies she enrolled in the program. *Id.* ¶ 27; Ex. D to Compl., ECF No. 1-4. According to Parkland Legal's welcome packet, Gaughf was represented by Parkland Legal attorneys. Compl. ¶ 23; Ex. C to Compl, ECF No. 1-3 at 2 ("Always tell your creditors that you have hired an attorney . . . .") But Parkland Legal's only response to the lawsuit was to email Gaughf instructions on what to do in court and a pro se answer. Compl. ¶ 28; Ex. E to Compl., ECF No. 1-5 at 2. The only attorney involvement Gaughf remembers is a conversation about bankruptcy with a Parkland Legal attorney in Alabama. Compl. ¶ 30.

Frustrated, Gaughf got out of the program. *Id.* ¶ 29. Her debt had increased, not decreased, and she and her husband filed the underlying chapter 7 case. *Id.* ¶¶ 33, 34.

**CONCLUSIONS OF LAW**

In the Fifth Circuit, a motion to compel arbitration presents two questions. The first is whether the arbitration agreement is valid under state law, that is, whether the parties formed "any arbitration agreement at all." *Tower Loan of Miss., L.L.C. v. Willis (In re Willis)*, 944 F.3d 577, 579 (5th Cir. 2019) (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)). If yes, the second question is whether the arbitration agreement covers the claim at issue. *Id.* Ordinarily, the court answers both questions. *Id.* But if the arbitration agreement includes a delegation clause empowering the arbitrator to rule on the second question, the analysis changes. *Kubala*, 830 F.3d at 201. After finding a valid arbitration agreement, the court asks only whether the purported delegation clause "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* at 202. If yes, the claim must be compelled to arbitration "absent some exceptional circumstance." *Id.* at 203.

### I. The Arbitration Agreement Is Valid and Binding on the Trustee and Includes a Valid Delegation Clause.

As to the first question, the Trustee does not challenge the validity of the Arbitration Agreement. The Arbitration Agreement therefore binds Gaughf. But does it bind the Trustee?

"A trustee may pursue any claim that the debtor would have had in the absence of a bankruptcy case . . . ." *Huffman v. Legal Helpers Debt Resol., L.L.C. (In re Huffman)*, 486 B.R. 343, 354-55 (Bankr. S.D. Miss. 2013). In asserting such claims derived from the debtor's rights, the trustee "stands in the 'shoes' of the debtor and is limited to the same extent as the debtor under nonbankruptcy law." *Id.* at 355 (citing *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3d Cir. 1989); *see generally Ins. Co. of N. Am. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1068-69 (5th Cir. 1997) (discussing distinction between actions derived from the debtor and actions created by the

5

Bankruptcy Code). Because the Aiding and Abetting Count is a nonbankruptcy claim that Gaughf herself could assert, the Trustee stands in Gaughf's shoes. *See Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 425 B.R. 78, 82-83 (Bankr. S.D.N.Y. 2010) (concluding that aiding and abetting breach of fiduciary duty was state law claim that Trustee brought standing in shoes of debtor). Because Gaughf is bound by the Arbitration Agreement, the Trustee is bound.

As to the second question, the Arbitration Agreement includes a delegation clause. To determine its validity and enforceability, the Court compares it to the delegation clause that was found valid and enforceable in *Kubala*. That clause stated, "The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute." 830 F.3d at 204. The delegation clause here is substantially similar: "[A]ny controversy between the parties . . . (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this [DAAA] or its performance, breach, termination, enforcement, interpretation or validity, *including the determination of the validity, scope or applicability of this provision to arbitrate*, must be resolved by binding and confidential arbitration." ECF No. 18 at 3 (emphasis added).

Because the delegation clause is valid and enforceable, the Aiding and Abetting Count must be compelled to arbitration "absent some exceptional circumstance." *See Kubala*, 830 F.3d at 203. But *Kubala* was not a bankruptcy proceeding, and it is silent about what "exceptional circumstance" might mean in the bankruptcy context, particularly where, as here, the complaint pleads counts under the Bankruptcy Code in addition to the nonbankruptcy debtor-derived count.

6

## II. The Bankruptcy Court May Decline to Enforce an Arbitration Agreement.

Federal policy favors arbitration. *In re Huffman*, 486 B.R. at 352. ("The Federal Arbitration Act . . . embodies a 'liberal federal policy' that favors arbitration."). But bankruptcy courts may decline to enforce arbitration agreements when certain conditions apply. "[A]t least where the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code . . . ." *Nat'l Gypsum*, 118 F.3d at 1069.

The central question is "the underlying nature of the proceeding." *Id.* at 1067. Is the action as a whole "derived from the debtor . . . [or] created by the Bankruptcy Code"? *Id.* at 1068. In *National Gypsum*, the adversary complaint sought a declaration that a creditor's collection efforts either violated the chapter 11 discharge injunction or were precluded by the debtor's confirmed plan. *Id.* at 1058. The Fifth Circuit found that the complaint "concerned matters central to National Gypsum's confirmed reorganization plan." *Id.* at 1067. Issues arising under contract law were implicated "in only the most peripheral manner (if at all)." *Id.* Holding that the proceeding was "a nondebtor-derivative action to enforce asserted rights created by the Bankruptcy Code" and that arbitration would be inconsistent with the Code, the Fifth Circuit affirmed the bankruptcy court's refusal to order arbitration.[4] *Id.* at 1071.

Determining the underlying nature of a proceeding is more nuanced than the core/non-core distinction. *Id.* at 1067 (observing that the core/non-core distinction, although "practical and workable," is "too broad"). Core proceedings either arise under the Bankruptcy Code or arise in a

---

[4] The Fifth Circuit recently reaffirmed *National Gypsum* on only the question of whether bankruptcy courts have the discretion to refuse to compel arbitration of an action seeking enforcement of the discharge injunction. *See Henry v. Educ. Fin. Serv. (In re Henry)*, 944 F.3d 587, 591 (5th Cir. 2019).

7

bankruptcy case. 28 U.S.C. § 157(b)(1). In other words, a core proceeding either involves a right created by the Bankruptcy Code, for example, an action by the trustee to avoid a preference; or is a proceeding that could arise only in bankruptcy, for example the filing of a proof of claim. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). Proceedings that are only "related to" a bankruptcy case are non-core. 28 U.S.C. § 157(a)(3). A non-core proceeding "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *Wood*, 825 F.2d at 97. But "not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *Nat'l Gypsum*, 118 F.3d at 1067. By the same reasoning, "[n]ot every cause of action must arise under or in a bankruptcy case to keep the case in bankruptcy court." *Zimmerli v. Ocwen Loan Servicing, LLC (In re Zimmerli)*, 432 B.R. 238, 243 (Bankr. N.D. Tex. 2010).

### III. The Bankruptcy Court Must Enforce This Arbitration Agreement.

Here, the Aiding and Abetting Count is non-core. The counts for turnover of estate property under 11 U.S.C. § 542(e), fraudulent transfer under 11 U.S.C. § 548, and accounting under 11 U.S.C. § 542(a) are creditor claims asserted by the Trustee on behalf of creditors under powers conferred by the Bankruptcy Code and are therefore core. *Cf. Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 498 (5th Cir. 2002) (holding that claims under §§ 544, 548, and 550 were creditor-based claims adjudicating bankruptcy rights that were "separate and unrelated to Debtor's pre-petition legal or equitable rights").

Ordinarily, in considering the arbitrability of an adversary proceeding that includes both core and non-core counts, the court determines whether the underlying nature of the proceeding "derives exclusively from the provisions of the Bankruptcy Code" and, if yes, whether the

8

nonbankruptcy count is implicated only peripherally. *See* 118 F.3d at 1067. But here, with only the arbitrability of the non-core count at issue, there is no reason to determine the proceeding's underlying nature or the relationship between the core and non-core counts. The only question is whether arbitration of the Aiding and Abetting Count would conflict with the purpose of the Code.

The party opposing arbitration bears the burden of showing "that Congress intended to preclude [arbitration] for the claim at issue." *Sternklar v. Heritage Auction Galleries, Inc. (In re Rarities Grp., Inc.)*, 434 B.R. 1, 8 (D. Mass. 2010) (citing *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). The burden is therefore on the Trustee to show that arbitration of only the Aiding and Abetting Count would conflict with the purpose of the Bankruptcy Code. The Trustee has not carried that burden.

The purpose of the Code includes "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Nat'l Gypsum*, 118 F.3d at 1069. As to how arbitration of only the Aiding and Abetting Count would conflict with any of these values, the Trustee raises only efficiency concerns, quoting, without elaboration, a single sentence from *Gandy*, 299 F.3d at 499: "Parallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations." ECF No. 24 at 9.

The Trustee is correct that "efficient resolution of claims and conservation of the bankruptcy estate assets are integral purposes of the Bankruptcy Code." *Nat'l Gypsum*, 118 F.3d at 1069 n.21. But efficiency concerns "may well represent legitimate considerations" only "insofar as [they] might present a genuine conflict between the Federal Arbitration Act and the Code—for example where substantial arbitration costs or severe delays would prejudice the rights of creditors

9

or the ability of a debtor to reorganize." *Id.* Here, the Trustee has not shown that the costs of arbitration would be "substantial" or that delays would be "severe" or that arbitration would prejudice the rights of any creditors in this consumer chapter 7 case, where reorganization is irrelevant. She also has not shown that bifurcation of this proceeding could subject the parties to "dichotomous obligations," *Gandy*, 299 F.3d at 499. The Trustee therefore has not shown that arbitration of only the Aiding and Abetting Count would conflict with the purpose of the Bankruptcy Code.

## ORDER

Because the Arbitration Agreement is valid and binds the Trustee and because the Trustee has failed to carry her burden to show that the purpose of the Bankruptcy Code conflicts with arbitration, the Aiding and Abetting Count against Global must be referred to arbitration and stayed in the adversary proceeding pending a ruling from the arbitrator.

Accordingly, the Motion is **ORDERED GRANTED.**

*##END OF ORDER##*